# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| Plaintiff, ) | Case No.  2:12-cr-00236-MMD-GWF |
| vs. ) | **ORDER** |
| VINAY BARARIA, ) | |
| Defendant. ) | |

This matter came before the Court on October 25, 2012, for a hearing on the Government's Petition for Action on Conditions of Pretrial Release (#42), filed on October 17, 2012.  Defendant Vinay Bararia ("Bararia") made his Initial Appearance on the Government's petition on October 18, 2012, wherein he was detained pending the hearing on the Government's petition.  *See* Mins. of Proceedings (#46).

## BACKGROUND

On March 2, 2012, Bararia was charged in a criminal complaint with violating 21 U.S.C. §§846 and 841(a)(1).  (#1).  He made his Initial Appearance on that same day and was released on a personal recognizance bond pursuant to 18 U.S.C. § 3142 and placed under Pretrial Services supervision with several conditions, including the surrender of his DEA Certificate of Registration. *See* Order (#5).  He was also prohibited "from ordering, possessing, dispensing, or prescribing any controlled substance."  *Id*.  Bararia executed a "Voluntary Surrender of Controlled Substances Privileges" form specifically indicating that he did "relinquish (his) privilege to handle controlled substances listed in schedules II through V."  *See* Govt. Ex. 1.[1]  The form specifically indicates that Bararia "understand(s) that he will not be allowed to order, manufacture, distribute, possess,

---

[1] The specific exhibits referenced throughout this Order were entered into evidence during the October 25, 2012, revocation hearing.

dispense, administer, prescribe, or engage in any other controlled substances activities whatever, until such time as (he is) again properly registered."

Subsequently, on May 2, 2012, Bararia was arrested for violating the conditions of his pretrial release by writing prescriptions for a variety of controlled substances on behalf of several patients. (#14). He was detained pending a hearing on the question of whether his pretrial release should be revoked. *See* Mins. of Proceedings (#19). On May 16, 2012, Bararia appeared before the undersigned for his first revocation hearing. At the hearing, the undersigned found that there was clear and convincing evidence that the conditions of release had been violated, but stopped short of finding that Bararia was a flight risk or danger to the community. Further, Bararia was given the benefit of the doubt that his violation was the result of a misunderstanding. Therefore, the Court did not find that Bararia was unlikely to abide by any condition or combination of conditions of release. Consequently, pretrial release was not revoked and Bararia was released with additional conditions. *See* Mins. of Proceedings (#23) and Order (#24).

Thereafter, on June 26, 2012, Bararia was indicted on seven counts of violating 21 U.S.C. §§ 846 and 841 and conspiring to distribute controlled substances, possession of controlled substances with the intent to distribute, and distribution of controlled substances. (#28). He appeared before United States Magistrate Judge Cam Ferenbach for his arraignment and requested that the terms of his pretrial release be modified. *See* Mins. of Proceedings (#32). The request was denied and Bararia was instructed to file a written request. Approximately two (2) months later, on September 21, 2012, Bararia filed a motion to modify the conditions of his release. (#39). A motion hearing was set forth October 19, 2012. However, a few days prior to the hearing, Bararia was arrested for violating the conditions of his pretrial release. Consequently, the hearing was vacated and a hearing to determine whether pretrial release should be revoked set for October 25, 2012.[2]

At the outset of the October 25, 2012, hearing, the Government moved for revocation of

---

[2] Bararia made an initial appearance on the Petition for Action of Conditions of Pretrial Release (#42) on October 18, 2012. He was ordered detained and remanded to custody until his revocation hearing on October 25, 2012. *See* Mins. of Proceedings (#46); Order (#47).

2

Bararia's pretrial release pursuant to 18 U.S.C. § 3148(b).  Counsel for the Government argued that revocation was appropriate because Bararia had (1) violated the conditions of his pretrial release and (2) that sufficient evidence exists to provide probable cause to believe that Bararia committed a crime by prescribing controlled substances without a license in violation of 21 U.S.C. §841(a)(1). Bararia conceded a "technical violation" of the conditions of pretrial release, but argued that conditions could be fashioned to assure he was not a flight risk and did not pose a danger to the community.

At the October 25, 2012 hearing, the Government called several witnesses in support of its contention that Bararia violated the conditions of his pretrial release.  Through the testimony of Detective Jeremy Melvin, Las Vegas Metro Police Department and member of a local DEA task force, the government introduced a copy of a prescription on Bararia's prescription form for one of his patients ("prescription #1").  *See* Govt. Ex. 3.  Prescription #1 is dated May 17, 2012, just one day after Bararia's first revocation hearing, and is for a schedule 3 controlled substance.   Based upon comparison with other signatures, Melvin testified that the signature on prescription #1 appeared to be Bararia's and was filled at a pharmacy on May 18, 2012.  Ex. 3.  Detective Melvin further testified that he spoke with the patient for whom the prescription #1 was filled and confirmed that the patient had observed Bararia write the prescription in May 2012.  The applicable Nevada Prescription Monitoring Program report confirms that prescription #1 was dated May 17, 2012, and was first filled on May 18, 2012.  *Id.*

The Government also introduced a copy of another prescription dated May 17, 2012 for a different patient for a schedule 3 controlled substance ("prescription #2"), which also appears to be signed by Bararia.  *See* Govt. Ex. 4.  The prescription form was obtained at a local Walgreen's pharmacy by Detective Melvin.  Detective Melvin testified that he contacted the patient for whom prescription #2 was filled, and that the patient recalled receiving the original prescription from Bararia on May 17, 2012.  Prescription #2 was filled on May 18, 2012.  Detective Melvin also testified that the patient for whom prescription #2 was filled recalled being unable to refill the prescription the next month and contacting Bararia's office for assistance.  The patient recalled that Bararia said that he was having some difficulties authorizing prescriptions and was trying to find

another doctor to help him. He also recalled that sometime in June and July of 2012, Bararia injected him with the same controlled substance previously prescribed. The patient further recalled that he was specifically advised by Bararia's office that the difficulties in authorizing the prescription had been resolved, and that a prescription for the same controlled substance had been called in and was available for him for pick up. Detective Melvin also obtained from the pharmacy a copy of the form used when a physician calls in a prescription. The form indicates that the medicine was ordered via telephone by a Dr. Goldsmith. Ex. 4. The patient picked up his prescription on July 18, 2012, but later noticed that the prescribing physician was Dr. Goldsmith, not Bararia. *Id*. Melvin testified that the patient stated that he believed Bararia had found another doctor to assist him and, therefore, refilled the prescription in August and September.

It also appears that a third patient obtained a prescription (prescription #3) from Dr. Goldsmith without Goldsmith's approval. *See* Govt. Exs. 5 and 8. Detective Melvin testified that the third patient went to Dr. Goldsmith's office to renew the prescription only to learn that Dr. Goldsmith had never authorized the prescription. The Government introduced a letter from Dr. Goldsmith indicating that he, Dr. Goldsmith, did not write or authorize the prescriptions in question and immediately informed the medical board as well as the pharmacy that he did not issue the prescription. *See* Exs. 5 and 8.

Finally, Detective Melvin testified that he reviewed the Nevada Prescription Monitoring Program report and discovered that another patient of Bararia received a prescription (prescription #4) for a Schedule 4 controlled substance from Bararia, and obtained refills of the prescription from a different physician. *See* Govt. Ex. 6. On July 10, 2012, the prescription in question was refilled under the name of Dr. Mashhood. *Id.* Detective Melvin contacted Dr. Mashood's office and obtained written confirmation that there was no record that Dr. Mashhood had ever seen the patient in question. *See* Govt. Ex. 7. The patient also confirmed that he was not a patient of Dr. Mashhood, and that Bararia had been his doctor for several years and was the only doctor who had ever prescribed that particular medicine to him.

After Detective Melvin testified, the Government called Donald Andreas, an investigator for the Nevada Board of Medical Examiners, to testify. Mr. Andreas testified that he reviewed the

Nevada Prescription Monitoring Program report for an individual and noticed that a prescription for a controlled substance had been written by Dr. Bararia, and then later by Dr. Goldsmith (prescription #3). *See* Govt. Ex. 8. Andreas testified that he spoke with Dr. Goldsmith's staff and confirmed that the individual in question was not a patient of Dr. Goldsmith. He also confirmed that the patient had come to Dr. Goldsmith's questioning why his medicine had been prescribed under Dr. Goldsmith's name since he was not his physician. Andreas spoke with the patient who indicated that he was a patient of Bararia, that he had seen Bararia in July 2012, and that Bararia had called in a prescription for him on July 12, 2012, and again on October 4, 2012.

At the outset of the hearing, Defendant Bararia, through his counsel, conceded that he had prescribed testosterone, a controlled substance, in violation of the conditions of his pretrial release. He argued, however, that the prescriptions were inadvertent because he was unaware that testosterone was a controlled substance. He denies making any other prescriptions and argues that any prescription unrelated to testosterone submitted by the government was part of the course of continued care by other physicians. Bararia also argued that the "proffer" from Dr. Mashood is unreliable as he clearly was seeing Bararia's patients. *See* Def's. Ex. A; *see also* Ex. D attached to Def's Resp. (#20) (a letter from Dr. Mashood appearing to indicate that he would see Bararia's patients). Bararia argues that the evidence shows his efforts to maintain continuity of care for his patients by utilizing other physicians, but nothing more. Ultimately, despite conceding a "technical" violation, Bararia argues that he is not flight risk or danger to the community and that adequate, additional conditions can be imposed. Specifically, he requests that he be placed on house arrest so he can sell his medical practice, his home, and spend time with his young family.

## DISCUSSION

Defendant Bararia made his initial appearance in this matter on March 2, 2012, wherein he was released pursuant to 18 U.S.C. § 3142 and placed under Pretrial Services supervision with several conditions. *See* Order (#5). If a condition of pretrial release is violated, a request to revoke is heard under 18 U.S.C. § 3148, not section 3142. The standards under the two sections are markedly different. *United States v. Gill*, 2008 WL 2120069 (E.D. Cal.). Pursuant to 18 U.S.C. § 3148, "[a] person who has been released under section 3142 . . . and who has violated a condition

of his release, is subject to revocation of release, an order of detention, and a prosecution for contempt of court." *See* 18 U.S.C. § 3148(a). Section 3148 further provides that:

> The judicial officer shall enter an order of revocation and detention if, after a hearing, the judicial officer
>
> (1) finds that there is–
>
> (A) probable cause to believe that the person has committed a Federal, State, or local crime while on release; or
>
> (B) clear and convincing evidence that the person has violated any other condition of release; and
>
> (2) finds that–
>
> (A) based on the factors set forth in section 3142(g) of this title, there is no condition or combination of conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community; or
>
> (B) the person is unlikely to abide by any condition or combination of conditions of release.
>
> If there is probable cause to believe that, while on release, the person committed a Federal, State, or local felony, a rebuttable presumption arises that no condition or combination of conditions will assure that the person will not pose a danger to the safety of any other person or the community. If the judicial officer finds that there are conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community, and that the person will abide by such conditions, the judicial officer shall treat the person in accordance with the provisions of section 3142 of this title and may amend the conditions of release accordingly.

Section 3148 gives the judicial officer a choice between two alternatives. First, if there is probable cause to believe that a defendant has committed a crime while on release, "a rebuttable presumption arises that no condition or combination of conditions will assure that the person will not pose a danger to the safety of any other person or the community." 18 U.S.C. § 3148(b)(1)(A). There is no limitation in section 3148(b) regarding the types of categories of Federal, State, or local crimes that will support an order revoking pretrial release. *United States v. Soria*, 2011 WL 3651272 *6 (D. Nev.) (citation omitted). Although preferable, the failure of the government to identify the specific crimes allegedly committed while on release is not fatal to revocation. *C.f.*, *Soria*, 2011 WL 3651272 *8.

Second, the court may find that there is clear and convincing evidence that the person has

6

violated the terms of release. 18 U.S.C. § 3148(b)(1)(B). If so, the court must determine whether, based on the factors set forth in section 3142(g), "there is no condition or combination of conditions that will assure that the person will not flee or pose a danger to the safety of any other person or the community." 18 U.S.C. § 3148(b)(2)(A). Alternatively, if there is clear and convincing evidence of a violation and the court determines that "the person is unlikely to abide by any condition or combination of conditions of release" revocation is appropriate. 18 U.S.C. § 3148(b)(2)(B).

**1. Revocation Pursuant to 18 U.S.C. § 3148(b)(1)(A)**

The Court's first query under the statute is whether there is probable cause to believe Bararia has committed a Federal, State, or local crime while on release. Because no charging documents have been filed, the Court must determine whether the Government presented sufficient evidence at the revocation hearing to support a finding of probable cause to believe that Bararia committed a crime while on release. *Soria*, 2011 WL 3651272 at *7.

"[P]robable cause means 'fair probability, not certainty or even a preponderance of the evidence.'" *United States v. Krupa,* 633 F.3d 1148, 1151 (9th Cir. 2011) (quoting *United States v, Gourde,* 440 F.3d 1065, 1069 (9th Cir. 2006) (en banc)). "[W]hether there is a fair probability depends upon the totality of the circumstances, including reasonable inferences, and is a 'commonsense, practical question,'" for which "[n]either certainty nor a preponderance of the evidence is required." *Id.* (quoting *United States v. Kelley,* 482 F.3d 1047, 1050 (9th Cir.2007) and *Illinois v. Gates,* 462 U.S. 213, 246 (1983)). Although the Federal Rules of Evidence apply generally at a pretrial hearing, *United States v. Brewer*, 947 F.2d 404, 410 (9th Cir. 1991), "the rules of evidence normally applicable in criminal trials do not operate with full force at hearing before the judge to determine the admissibility of evidence." *United States v. Matlock*, 415 U.S. 164, 172-73 (1974) (footnote omitted). Specifically, it is well established that a judge may consider hearsay statements in determining whether there is probable cause to believe a person has committed a crime. *Cf.*, *United States v. Castillo*, 866 F.2d 1071, 1077 (9th Cir. 1988) (citation omitted).

The undersigned has carefully considered the testimony of Detective Melvin and Inspector

7

Andreas, together with the documentary exhibits admitted at the hearing, and finds the evidence sufficient to establish probable cause that Defendant Bararia committed a crime while on pretrial release. Specifically, the undersigned finds that there is probable cause to believe Bararia violated 21 U.S.C. 841(a)(1) while on release.

When Bararia made his initial appearance on March 2, 2012, he was released subject to several conditions and supervision by Pretrial Services. Those conditions included the voluntary surrender of his DEA certificate of registration and a prohibition from "ordering, possessing, dispensing, or prescribing any controlled substances." Order (#5). Bararia did, in fact, voluntarily surrender the privilege to handle any controlled substances listed in schedules II through V. Ex. 1. In so doing, Bararia expressly acknowledged that he was "not permitted to order, manufacture, distribute, possess, dispense, administer, prescribe, or engage in any other controlled substances activities" until such time as he was again properly registered. *Id*.

As previously noted, Bararia conceded during the revocation hearing that he did, in fact, prescribe a controlled substance just one day after the prior revocation hearing. He argues, however, that he was unaware at the time that he was prescribing a controlled substance. Based on the record up to the point of the acknowledged prescriptions, the Court does not find Bararia's argument that he was unaware of he was prescribing a controlled substance credible. Just one day prior, he had been present before the undersigned for his first revocation hearing arguing the same thing – that his continued prescribing activities were the result of a misunderstanding. At that hearing on May 16, 2012, he acknowledged, through his counsel, that he was aware that he cannot prescribe or order within any hospital or his practice. The Court acknowledged the potential for confusion and determined not to revoke Bararia's pretrial release at that time. To ensure understanding, the undersigned had this direct colloquy with Bararia:

> Court: Now, first of all, Doctor, you will be subject to Pretrial Supervision. If you have questions about what the orders mean or what you can and can't do, don't ask your counsel, because counsel's opinion, while it's important, is not the opinion you should rely on, you should rely on Pretrial Services.
>
> Defendant: Yes, sir.
>
> Court: I understand you have surrendered your passport. Is that true?

>Defendant: Yes, sir.
>
>Court: You are to obtain no passport or other travel documents. Your travel is restricted to Clark County, Nevada.
>
>Defendant: Yes, sir.
>
>Court: You will comply with any sanctions or restrictions imposed by the Nevada State Board of Medical Examiners and the Nevada State Board of Pharmacy. I understand you have already surrendered your certificate of [registration] for the [DEA]. You are prohibited from ordering, possessing, dispensing, or prescribing any controlled substances --
>
>Defendant: Uh-huh.
>
>Court – period.

Transcript of May 16, 2012 hearing (#37) at 160:21-161:19. Based on these facts, the Court has little trouble finding that there is probable cause to believe Bararia committed a federal crime while on release. His activity, conducted just one day after the first revocation hearing, was in direct contravention of the Court's order and federal law.

Moreover, the testimony presented and documentary evidence submitted by the Government at the October 25, 2012 revocation hearing clearly shows probable cause a crime was committed. The testifying agents thoroughly investigated and confirmed the statements and facts obtained from others during the course of their investigation. Detective Melvin obtained a copies of several prescriptions for controlled substances issued after the May 16, 2012 revocation hearing. He confirmed through his own investigation that at least two of the prescriptions were written by Bararia. Melvin independently spoke with the patients for whom the prescriptions were filled confirming that they had observed Bararia write the prescriptions. Melvin also obtained the applicable Nevada Prescription Monitoring Program report to confirm the prescriptions. He also confirmed that at least one of the patients was injected by Bararia with a controlled substance in June and July of 2012.

As it relates to providing unauthorized prescriptions in the name of Dr. Goldsmith, there is sufficient evidence, at least to satisfy the probable cause standard, that Bararia unlawfully used Goldsmith's name to engage in illegal prescription activities after the first revocation hearing. Melvin confirmed with one of the patients that Goldsmith informed him (the patient) that he

(Goldsmith) had never authorized the patient's prescription.  The Government also introduced a letter from Dr. Goldsmith indicating that he did not write or authorize the prescriptions in question and immediately informed the medical board as well as the pharmacy that he did not issue the prescription.  *See* Exs. 5 and 8.  This was independently corroborated by witness Donald Andreas.

The email introduced by Bararia (Ex. A) does not effectively rebut the corroborated accusation that Bararia unlawfully used Goldsmith's name to prescribe medication.  Indeed, while it is true that Goldsmith may have agreed to see some of Bararia's patients, no evidence was submitted to support the contention that Bararia or his agents were ever given authority to prescribe using Goldsmith's name.  The Court further finds that the investigation into prescriptions allegedly issued by Bararia using the name Dr. Mashhood sufficient, for purposes of probable cause, to believe that a crime was committed.  Melvin contacted Dr. Mashood's office and obtained written confirmation that there was no record that Dr. Mashhood had ever seen the patient in question.  *See* Govt. Ex. 7.  The patient also confirmed that he was not a patient of Dr. Mashhood.  The patient further confirmed that Bararia had been his doctor for several years and was the only doctor who had ever prescribed that particular medicine to him.

When viewed together, all of the testimony and evidence received by the Court clearly supports the conclusion that there is probable cause to believe Bararia committed a crime while on pretrial release.  Having so concluded, a rebuttable presumption is triggered that there is no condition or combination of conditions that will assure the defendant will not pose a danger to the safety of any other person or the community.  Bararia has not overcome the presumption in this case.  His argument that the conceded unlawful prescriptions were inadvertent is not credible in light of the fact that he was specifically admonished not to fill prescriptions for controlled substances in a revocation hearing conducted one day before two of the prescriptions were issued.  Consequently, the Court finds that revocation is appropriate pursuant to 18 U.S.C. § 3148(b)(1)(A).

**2. Revocation Pursuant to 18 U.S.C. § 3148(b)(1)(B)**

Separately, the Court finds that revocation is also appropriate under section 3148(b)(1)(B).  First, there is no debate that Bararia violated the terms of his release.  Bararia conceded as much.  Once it is clear a defendant has violated the terms of release, the court must determine (1) whether,

based on the factors set forth in section 3142(g), there is a condition or combination of conditions that will assure the defendant will not flee and is not a danger to the community or, alternatively, (2) whether the person is unlikely to abide by any condition or combination of conditions. 18 U.S.C 3148 §§ (b)(2)(A) and (b)(2)(B).

After review, the Court finds that Bararia has demonstrated himself unlikely to abide by any conditions or combination of conditions. This is his second revocation hearing and, despite specific and direct guidance from the Court, he violated the terms of his pretrial release just one day after his first revocation hearing. It appears this conduct continued over the course of several months. Having shown such callous disregard for this Court's prior order, the undersigned can only conclude that any other conditions would be treated with the same disregard. Bararia has determined at every turn to push and exceed the limits of this Court's orders. To argue now that he finally understands is, to put it mildly, not credible. Consequently, revocation is also appropriate under §§ 3148(b)(1)(B) and 3148(b)(2)(B).

Based on the foregoing and good cause appearing therefore,

**IT IS HEREBY ORDERED** that Defendant Vinay Bararia's pretrial release is **revoked**.

**IT IS FURTHER ORDERED** that Defendant Vinay Bararia be **detained** pending trial in this case.

DATED this 7th day of November, 2012.

_____
**C.W. Hoffman, Jr.**
**United States Magistrate Judge**